**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **No.   93-cr-418-4 (TFH)** |
| | ) | |
| **JOSE NARANJO,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## SUPPLEMENTAL MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

Mr. Jose Naranjo, through undersigned counsel, hereby supplements his *pro se* Petition for Reduction of Sentence/Compassionate Release ("*Pro Se* Pet."), ECF No. 626, and respectfully moves this Court pursuant to the newly-amended 18 U.S.C. § 3582(c)(1)(A)(i) for a compassionate release order reducing his sentence to time-served. Mr. Naranjo is 75 years old, and has been incarcerated for over 40 years. He is a citizen of Columbia and subject to an immigration detainer and deportation if ever released from prison. The life sentence imposed in this case was then statutorily-mandated, but would not be mandated today. His wife of 44 years is 70 years old, and chronically ill. She resides in Medellin, Columbia, and needs his care. Mr. Naranjo's circumstances satisfy the "extraordinary and compelling reasons" standard under § 3582(c)(1)(A)(i), and his current life sentence is greater than necessary to meet the purposes of sentencing under 18 U.S.C. § 3553(a). He respectfully requests that, after considering the applicable factors in § 3553(a), this Court reduce his sentence to time-served.

## BACKGROUND

Mr. Naranjo is 75 years old, and a citizen of Columbia. He has been incarcerated in the United States since September 1979—for over 40 years. Presentence Investigation Report ("PSR") ¶ 84. He was convicted in this case of one count of conspiracy to distribute and possess

with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A)(ii), and 846, for offense conduct while incarcerated which concluded in November

1993.  Judgment at 1 (Aug. 1, 1995).  On July 25, 1995, he was sentenced to life, as then

statutorily mandated, because he had two prior convictions for felony drug offenses.  *Id*. at 1-2,

4; Min. Entry (July 25, 1995); *see* 21 U.S.C. § 841(b)(1)(A) (1996).  Because the Sentencing

Guidelines were then mandatory, the Court was also required to run the life sentence

consecutively to his undischarged term of imprisonment.  *See* PSR ¶ 91 (citing U.S.S.G. §

5G1.3(a)).[1]  If Mr. Naranjo is ever released from prison, he is subject to an immigration detainer

and will be deported to Columbia.  PSR p. 1.

Mr. Naranjo and his wife, Gloria Maria Ortiz, married in February 1975 in Medellin,

Columbia, and they have two children.  PSR ¶ 75.  Their son, Carlos, is 44 years old and resides

in Medellin.  Their daughter is 41 years old and a United States citizen; she resides in Miami,

Florida.

As described in more detail below, Mrs. Naranjo 70 years old and suffers from chronic

medical problems that severely impair her ability to care for herself.  She suffers from chronic

arthrosis and a degenerative spinal lumbar disk disorder which impede her ability to walk and

move around.  She also suffers from chronic conjunctivitis which impairs her ability to see.  Her

---

[1]  At the time of the offense in this case, Mr. Naranjo was serving a 26-year sentence in case no.
83-cr-16-07 (M.D.N.C.), that was imposed in 1983, before the Sentencing Reform Act of 1984
changed federal sentencing and eliminated parole.  His projected release date from that sentence,
before the instant consecutive life sentence was imposed, was December 8, 2001.  PSR ¶ 64.  He
has thus served at least 218 months (over 18 years), not including any good time credit, on the
instant sentence alone.  He has been in custody in connection with the instant offense since at
least February 22, 1994, the date of his arraignment, which as of this filing, is approximately 312
months (26 years).

son, though he lives in Medellin, no longer resides with her or cares for her, and Mr. Naranjo is effectively her only available caregiver.

On April 15, 2019, after receiving a Bureau of Prisons ("BOP") notice about the First Step Act and changes related to inmate requests for a reduction in sentence/compassionate release, Mr. Naranjo submitted a request to BOP for compassionate release. *See Pro Se* Pet., Ex. A (Notice to Inmate Population), ECF No. 626-1; Ex. B (BOP Request for Compassionate Release), ECF No. 626-2. The BOP did not respond to the request. Pursuant to the First Step Act, after over 30 days had lapsed, on June 3, 2019, Mr. Naranjo mailed a *pro se* petition for reduction of sentence/compassionate release to this Court, which was docketed on June 10, 2019. *Pro Se* Pet., ECF No. 626. Defense counsel was appointed and hereby supplements Mr. Naranjo's *pro s*e petition.

## APPLICABLE LEGAL PRINCIPLES

In First Step Act of 2018, Pub. L. 115-391 (Dec. 21, 2018), Congress amended 18 U.S.C. § 3582(c)(1)(A)(i) to allow a defendant to file a motion for a reduction of sentence based on extraordinary and compelling reasons. Prior to this amendment, the BOP was the sole entity allowed to file such a request. Now, a defendant may file such a motion after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" First Step Act § 603(b).

Section 3582(c)(1)(A) provides, in relevant part, that the Court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent they are applicable, if it finds that—"

(i)    extraordinary and compelling reasons warrant such a reduction; or

> (ii)     the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable guidance was issued before the passage of the First Step Act and has not been amended to account for the statutory changes to § 3582. Accordingly, courts have held that "the most sensible interpretation of the Sentencing Commission's guidance in light of Congress's recent statutory amendments is that 'the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive.'"  *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019) (quoting *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *5 (D. Me. July 11, 2019)); *see also United States v. Beck*, No. 1:13-cr-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

Tracking the language of the statute, the Guidelines suggest that a sentence reduction may be warranted if "the court determines that—"

> (1)     (A)  extraordinary and compelling reasons warrant the reduction; or

> (B)  the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

> (2)     the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3)     the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

According to the Guidelines application notes, "extraordinary and compelling reasons exist" when, as relevant here, a defendant's family circumstances are such that his spouse is incapacitated and the defendant would be the only available caregiver for the spouse.  U.S.S.G. § 1B1.13, appl. n. 1(C)(ii).  A sentence reduction may also be warranted for "[o]ther [r]easons," such as where "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," his family circumstances.  *Id*. appl. n. 1(D).[2]

The Guidelines application notes further provide:

> [A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

*Id*. appl. n. 2.  They also recognize that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction."  *Id*. appl. n. 4.  Thus, "[r]ead as a whole, the application notes suggest a flexible approach which considers all relevant circumstances."  *Beck*, 2019 WL 2716505, at *8.

---

[2]  To the extent that application note 1(D) restricts "other reasons" to those "as determined by Director of BOP," it conflicts with the First Step Act's statutory amendments and does not apply. *See United States v. Cantu*, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019).  Instead, "[r]ead in light of the First Step Act, it is consistent with the old policy statement and with the Commission guidance more generally for courts to exercise similar discretion as that previously reserved to the BOP Director in evaluating motions by defendants for compassionate release." *Beck*, 2019 WL 2716505, at *9.  Even before the First Step Act, the Commission recognized "that courts are in a 'unique' position to determine whether such circumstances are present."  *Id*. at *9 & n.11; U.S.S.G. § 1B1.13 appl. n. 4.

The BOP program statement on compassionate release is relevant only to the extent that its criteria are broader than those described in the Guidelines.  *See* U.S.S.G. § 1B1.13, appl. n. 1(D) (instructing that the Director of the BOP may designate *additional* "extraordinary and compelling reason[s]").  It generally parallels the policies in the Guidelines.  *See* PS 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) ("BOP Program Statement"), at pp. 9-12 (Jan. 17, 2019) (providing compassionate release consideration for inmates with an incapacitated spouse when the inmate would be the only available caregiver for the spouse).  The statement also recognizes that a sentence reduction may be warranted for "Elderly Inmates," including those "who are age 70 years or older and have served 30 years or more of their term of imprisonment," or those "age 65 or older who have served the greater of 10 years or 75% if the term of imprisonment to which the inmate was sentenced."  *Id*. at p. 6 (noting "[t]hese criteria are different from those provided in [§] 3582(c)(1)(A)(ii)").  *But see The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, Office of Inspector General, U.S. Dep't of Just. ("OIG Report") 45-46 (May 2015) (revised Feb. 2016), https://oig.justice.gov/reports/2015/e1505.pdf (concluding that these criteria for elderly inmates are unclear, confusing, and overly-restrictive).

Notably, the First Step Act "was enacted to further increase the use of compassionate release and . . . explicitly allows courts to grant such motions even when BOP finds they are not appropriate."  *Beck*, 2019 WL 2716505, at *6.  Indeed, by permitting defendants to file sentence reduction motions directly with the sentencing court, regardless of whether the BOP has weighed in, the First Step Act reflects Congress's aim to diminish the BOP's control over compassionate release.  *See United States v. Cantu*, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) (explaining that "defendants no longer need the blessing of the BOP to bring such motions").

6

This Court may determine whether a defendant's conditions are extraordinary and compelling independent of those reasons provided by the Commission or the BOP. Courts have concluded that, after passage of the First Step Act, compassionate release is not limited by the Commission's or the BOP's understanding of "extraordinary and compelling reasons," and that courts can thus determine those reasons. *See United States v. Urkevich*, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); *United States v. Bellamy*, 2019 WL 3340699, at *2 n. 5 (D. Minn. July 25, 2019) (citing lower court decisions); *Beck*, 2019 WL 2716505, at *5-6 (noting the First Step Act "was enacted to further increase the use of compassionate release and . . . explicitly allows courts to grant such motions even when BOP finds they are not appropriate"); *Cantu*, 2019 WL 2498923, at *3-5.

## ARGUMENT

**I.     Mr. Naranjo's Request For Compassionate Release Is Properly Before the Court.**

Mr. Naranjo submitted a request for compassionate release to the warden of his BOP facility on April 15, 2019. *See Pro Se* Pet. for Reduction of Sentence/Compassionate Release, Ex. B, ECF No. 626-2. The BOP has not officially responded or denied Mr. Naranjo's request, and it has been far more than 30 days since the receipt of the request by the warden of the facility. The copy of the request dated April 15, 2019, docketed at ECF No. 626-2, and the fact that Mr. Naranjo did not mail his *pro se* motion until over 30 days later, on June 3, 2019, *see Pro Se* Pet. at 5 (certificate of service), is proof that his request was submitted and the BOP did not respond within 30 days. Thus, Mr. Naranjo's motion is properly before the Court under the law as amended by the First Step Act. *See United States v. Walker*, 2019 WL 5268752, at *1 (N.D. Ohio Oct. 17, 2019); *see also United States v. York*, 3:11-cr-76, 3:12-cr-145, 2019 WL 3241166,

at *6 (E.D. Tenn. July 18, 2019) ("Because 30 days have passed since those requests, the Court has authority to hear this matter under § 3582(c)(1)(A).").

II.      **Extraordinary and Compelling Reasons Warrant a Sentence Reduction.**

      A.      **Mr. Naranjo's Wife is Chronically Infirm and He is Her Only Potential Caregiver.**

Mr. Naranjo qualifies for compassionate release based on the extraordinary and compelling reasons described in the Guidelines.  Mr. Naranjo's wife is 70 years old, lives alone, and struggles to care for herself.  As her medical records reflect,[3] she has been diagnosed with incapacitating spine conditions, including atherosclerosis, degenerative stenosis of the spinal canal, and facetory lumbar osteoarthrosis, as well as chronic conjunctivitis of her eyes.

These conditions are chronic and degenerative and increasingly impair Mrs. Naranjo's ability to perform activities of daily life.  "Atherosclerosis is a disease in which plaque builds up inside your arteries."  *Atherosclerosis*, Nat'l Insts. Health, U.S. Nat'l Library Medicine, http://medlineplus.gov/atherosclerosis.html.  The "plaque hardens and narrows your arteries," which "limits the flow of oxygen-rich blood to your body."  *Id*.  It can lead to stroke, heart attack, and numbness, pain, and infection in your limbs.  *Id*.

"Spinal stenosis is a degenerative condition" referring to the "narrowing of the spinal and nerve root canals," "enlargement of the facet joints," "thickening and stiffening of the ligaments," and "overgrowth of bone and bone spurs."  *Spinal stenosis*, Mayfield Brain & Spine, MayfieldClinic.com, https://d3djccaurgtij4.cloudfront.net/pe-spinal-stenosis.pdf.  It causes pain and weakness in the legs that occurs with walking or standing.  *Id*.  "Over time the symptoms

---

[3]  Due to the sensitive nature of the medical records and identifying information contained therein, Mr. Naranjo hereby moves for leave to file these records, along with unofficial English translations of the records, under seal.  A Notice of Filing of the sealed records will be publicly filed, and all records will be provided to the government.

increase, reducing one's physical endurance," and often requiring the use of a walker or cane for mobility. *Id.*

Osteoarthritis is "a disease of whole-joint failure." Alfred C. Gellhorn *et al.*, *Osteoarthritis of the spine: the facet joints*, 9(4) Nat'l Rev. Rheumatol 216 (Apr. 2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4012322/. According to the World Health Organization, osteoarthritis is one of the "most common and disabling musculoskeletal conditions." *Musculoskeletal conditions*, World Health Organization (Nov. 26, 2019), https://www.who.int/news-room/fact-sheets/detail/musculoskeletal-conditions. It causes persistent pain, significantly limits mobility, dexterity, and functional ability, is "commonly linked with depression," and "increase[s] the risk of developing other chronic health conditions." *Id.*; *see also Osteoarthritis*, Nat'l Inst. Health, Nat'l Inst. Aging, https://www.nia.nih.gov/health/osteoarthritis (noting it is "one of the most frequent causes of physical disability among older adults").

Mrs. Naranjo's medical records show she has suffered from continuous and debilitating spinal and back pain impairing her ability to walk since at least December 2013. The records reflect that the chronic pain has spread to other joints, including her elbows, ankles, and knees, and has not been relieved with physical therapy. In November 2015, she had a laminectomy (back surgery) to remove a herniated disc, but it did not provide her with any relief. She remained symptomatic after surgery, with a diagnosis of "lumbar disc disease and others, with radiculopathy."

Mrs. Naranjo's conditions are degenerative and effectively untreatable. Her pain and incapacitation has worsened with time, and will continue to worsen. In September 2019, she was able to get herself to a medical appointment, walking with a cane. However, in her ever-

weakening state, it is only a matter of time before she falls and/or is irreversibly injured.  A doctor's letter dated December 18, 2019, attached as Exhibit A, explains that Mrs. Naranjo's chronic osteomuscular pain requires continuous therapy.  *See* Ex. A, Note from Dr. Gabriela Patricia Vasquez Guerrero (Dec. 18, 2019), with unofficial English translation.  Mrs. Naranjo needs her husband's help to travel safely to therapy and other medical appointments, as well as to perform daily activities, such as buy groceries, prepare meals, launder clothes, etc.

No one other than Mr. Naranjo is able to provide primary care for Mrs. Naranjo on a daily basis.  Her daughter lives in the United States.  Though her son lives in Medellin and may help her on occasion, defense counsel understands that he no longer resides with her and is unable and/or unwilling to take her to medical appointments or care for her daily, as is necessary for her health and safety.  Accordingly, consistent with the Sentencing Commission's applicable policy statements, "extraordinary and compelling reasons exist" to reduce Mr. Naranjo's sentence.  U.S.S.G. § 1B1.13 appl. n. 1(C)(ii); *see Bucci*, 409 F. Supp. 3d at 2 (reasoning that the defendant's "role as the only potential caregiver for his ailing mother is an 'extraordinary and compelling reason' for compassionate release" and granting motion).

**B.**   **Mr. Naranjo is 75 Years Old, Has Been Incarcerated for Over 40 Years, and is Not a Danger to the Community.**

Mr. Naranjo is 75 years old, and his physiological age is likely akin to 85 to 90 years. *See* OIG Report 1-2 ("an inmate's physiological age averages 10–15 years older than his or her chronological age due to the combination of stresses associated with incarceration and the conditions that he or she may have been exposed to prior to incarceration").  A Department of Justice Office of Inspector General report published in 2015 found that aging inmates (inmates age 50 and older) are costly to incarcerate, BOP institutions lacked the staff and appropriate training to address the needs of the aging inmate population, the physical infrastructure of BOP

institutions could not adequately house aging inmates, and the BOP failed to provide programming opportunities addressing the needs of aging inmates.  *Id*. i-ii, 10, 16-17, 23-24, 30-31.

In addition, consistent with other research on aging and recidivism, the OIG's analysis of recidivism rates for aging inmates found that re-arrest rates for released inmates generally declined with age.  *Id*. 39; *see also* U.S.S.C., *The Effects of Aging on Recidivism Among Federal Offenders* (Dec. 2017) (showing Mr. Naranjo's age places him in a class of prisoners least likely to recidivate).  As particularly relevant here, of a selected sample of inmates released between 2006 and 2010, none of the released inmates age 70 and older incurred a re-arrest for new crimes within three years.  OIG Report 39.  And, a Department of Justice "working group to expand the use of compassionate release concluded that aging inmates do not pose a significant public safety threat."  *Id*. 46-47;.

The OIG also reviewed the BOP compassionate release eligibility policies for elderly inmates.  Notwithstanding a Department of Justice announcement "that the BOP would generally consider for compassionate release inmates age 65 and older who had not committed violent crimes and had served significant portions of their sentences," very few aging inmates are eligible for early release consideration under the BOP's policies.  *Id*. 41-43; *see also id*. 44-45 (noting that, in the year after the age-based policies were implemented, only two inmates were released under those provisions).  Thus, even though Mr. Naranjo is 75 years old, did not commit violent crimes, and has been incarcerated for 40 years, he may not meet the overly-restrictive BOP eligibility criteria for age-based compassionate release.  *See* BOP Program Statement p. 6-7 (§ 4).

Notably, section 3582(c)(1)(A)(ii) provides for early release in similar circumstances and signals that Mr. Naranjo's circumstances—including his age, length of imprisonment, and lack of dangerousness—constitute extraordinary and compelling reasons that warrant a sentence reduction, independent of his family circumstances.  Under that provision, the Court may reduce a term of imprisonment upon finding that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c)," and the BOP has determined "that the defendant is not a danger to the safety of any other person or the community."[4]  A defendant sentenced to 30 years (360 months), if including and accounting for all good time credit, may be eligible for release after approximately 25.5 years (306 months).  As noted above, Mr. Naranjo is well over 70 years old and has been in custody in connection with the instant offense since at least February 22, 1994, the date of his arraignment, which as of this filing, is approximately 26 years (312 months).  Thus, he has served the effective equivalent of 30 years.  Moreover, Mr. Naranjo has no prior violent felony conviction or history of violence.

Moreover, Mr. Naranjo's life sentence would not be statutorily mandated today.  The First Step Act eliminated the mandatory life sentence provision of § 841(b)(1)(A).  *See* First Step Act of 2018, § 401(a)(2)(A)(ii).  Under today's law, only a 25-year mandatory minimum would apply to Mr. Naranjo for the same offenses, and Mr. Naranjo has served more than 25 years since his arraignment in this case.  *See United States v. Cantu-Rivera*, 2019 WL 2578272, at *2 (S.D. Tex. June 24, 2019) (recognizing as a factor in the combination of extraordinary and compelling circumstances justifying a reduction in sentence "the fundamental change to sentencing policy

---

[4]  Section 3559(c), which was passed in 1994, mandates a life sentence for a defendant convicted of a third serious violent felony or a second serious violent felony plus a serious drug felony.  18 U.S.C. 3559(c).  Because § 3559(c) was passed in 1994, no inmate had served the minimum 30 years (360 months) until at least 2019, if accounting for good time credit (360 x .85 = 306 months (25.5 years)).

carried out in the First Step Act's elimination of life imprisonment as a mandatory sentence solely by reason of a defendant's prior convictions"); *cf. Urkevich*, 2019 WL 6037391, at *4 (holding a sentence reduction was "warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed").

      In addition, Mr. Naranjo was sentenced pre-*Booker*, when the Guidelines were unconstitutionally mandatory. The Court was then required to comply with § 5G1.3(a), and order that the sentence in this case run consecutively to Mr. Naranjo's undischarged term of imprisonment. Under the constitutional interpretation of the law today, the Guidelines cannot override 18 U.S.C. § 3584(a) and take away the Court's discretion to order that Mr. Naranjo's sentence run concurrently to any undischarged term of imprisonment.

      Significantly, Mr. Naranjo's Guidelines range was not life imprisonment; it was 360 months to life imprisonment. *See* Judgment at 4 (Statement of Reasons);[5] *see also* U.S.S.C., *Life Sentences in the Federal System* ("U.S.S.C. Life Sentences Report") 3 (Feb. 2015) ("The drug trafficking guidelines specifically provide for a sentence of life imprisonment for drug trafficking offenses, but *only where death or serious bodily injury resulted* from the use of the drug and the defendant had been convicted previously of a drug trafficking offense." (emphasis added)). With a sentence of 360 months, concurrent to the other sentence Mr. Naranjo was then serving, Mr.

_____

[5] The PSR calculated a base offense level of 34, and after a 4-level role enhancement, a total offense level of 38. PSR ¶¶ 52-60. After the retroactive amendments to the drug guidelines, Mr. Naranjo's base offense level would, today, be 32, based on the quantity of drugs listed in the PSR. With a total offense level of 36, and a criminal history category of VI, Mr. Naranjo's Guidelines range would be lower: 324 to 405 months. However, the Court determined the total offense level to be 40. Judgment at 4. Thus, even with a 2-level decrease to the base offense level from the drug guideline amendments, and a total offense level of 38 (instead of 40), the Guidelines range would remain 360 to life.

Naranjo might have become eligible for release, if he received all good time credit awarded by BOP, in August 2019.[6]

In any event, Mr. Naranjo has been in continuous custody since September 1979, *see* PSR ¶ 84, a period of 484 months (over 40 years).  The Sentencing Commission assigns a value of 470 months to sentences of life imprisonment for statistical analyses.  *See* U.S.S.C. Life Sentences Repor*t* 23 n. 52.  Thus, at this point in time, Mr. Naranjo has served more than the statistical equivalent of a life sentence of imprisonment for his crimes.

> **C.**     **Mr. Naranjo Suffers From Serious Medical Conditions Related to Aging and BOP Lacks Appropriate Medical Services.**

Mr. Naranjo continues to suffer from chronic ear infections, as noted in the PSR ¶ 78, and now also suffers from hypertension (high blood pressure).  A BOP report, dated February 28, 2019, notes that he has been on a "MEDICAL HOLD – DO NOT TRANSFER" since August 8, 2017.  *See* ECF No. 626-3 at p. 3.

A failure to control his hypertension puts Mr. Naranjo at very high risk of developing chronic kidney disease (*i.e.*, the gradual loss of kidney function which can progress to end-stage kidney failure).  *See* Rumeyza Kazancioglu, *Risk factors for chronic kidney disease: an update*, PubMed Central ( Nov. 27, 2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4089662/; *Chronic Kidney Disease*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/chronic-kidney-disease/symptoms-causes/syc-20354521.  Hypertension is one of the principal causes of diabetic kidney disease and kidney failure.  *High Blood Pressure and Diabetic Kidney Disease*, Joslin Diabetes Center, https://www.joslin.org/info/High-Blood-Pressure-and-Diabetic-Kidney-Disease.html.

---

[6] This calculation is based on 306 months (85% of 360 months) served from February 22, 1994, the date of the arraignment in this case.

To control hypertension, Mr. Naranjo's blood pressure must be constantly monitored and
he must adhere to a nutritious, low-sodium diet, but this is nearly impossible in prison.  *See
Prisoner Self Care: Hypertension*, Prison Legal News, 14 (2009),
https://www.prisonlegalnews.org/news/2009/apr/15/prisoner-self-care-hypertension/.  Indeed,
"the American Heart Association's [recommended] diet for . . .  hypertension make[s] clear
[that] conditions like hypertension can be prevented or even reversed to some extent by a
nutritious diet."  Wendy Sawyer, *Food for thought: Prison food is a public health problem*,
Prison Policy Initiative, https://www.prisonpolicy.org/blog/2017/03/03/prison-food/ (last visited
Jun. 11, 2019).  For people with "hypertension, public health organizations recommend less salt,
more fruit, more vegetables, only low fat or no fat dairy products, and reducing both total fat and
saturated fat (mostly animal fat) in the diet.  *Unfortunately, most prison diets have few fruits and
vegetables and are relatively high in salt and fat*."  *See, supra, Prisoner Self Care: Hypertension*
(emphasis added).

Thus, while diet is a critical component for Mr. Naranjo's self-care, prison lacks the
nutritious foods necessary for Mr. Naranjo's health.  Moreover, medical care and health services
are not available as needed for Mr. Naranjo due to prison overcrowding, the aging inmate
population, and the volume of inmates requiring medical attention.  *See* OIG Report 16-19.  In
combination with the other reasons discussed herein, Mr. Naranjo's health deterioration and
inability to access the care he needs are extraordinary and compelling reasons for his release.

III.   **Mr. Naranjo's Continued Incarceration is Greater Than Necessary to Accomplish
the Goals of Sentencing.**

The § 3553(a) factors also support compassionate release, and the lifetime that Mr.
Naranjo has already served is sufficient to satisfy the purposes of sentencing.  Mr. Naranjo is 75
years old and has been incarcerated for over 40 years.  Although the instant offense and Mr.

Naranjo's criminal history were serious and warranted a significant sentence, his release would not minimize the severity of the offense.  Mr. Naranjo's advanced age, health decline, and responsibility to care for his ailing wife realistically forecloses a probability of recidivism.  In light of these factors, he does not pose a danger to any other person or to the community.  The remaining years of Mr. Naranjo's life that he is slated to serve in federal prison are unnecessary, because his lengthy incarceration has fully served the purposes of incapacitation, retribution, and general and specific deterrence.

In addition, although rehabilitation, by itself, is not grounds for a sentence reduction, U.S.S.G. § 1B1.13 appl. n. 3 (citing 28 U.S.C. § 994(t)), the Court should consider Mr. Naranjo's post-offense developments under § 3553(a), *Pepper v. United States*, 562 U.S. 476, 492 (2011). Despite a life sentence with no possibility of parole, Mr. Naranjo has participated in BOP rehabilitative programming available to him and demonstrated significant rehabilitation.  In 2000, he completed the CODE program, an intensive residential treatment program, run by a psychology department, with coursework on, *inter alia*, cognitive skills, wellness, criminal thought patterns, the impact of behavior on self and others, and interpersonal skills.  *See* BOP Program Statement P5330.11 (Mar. 16, 2009) (Psychology Treatment Programs); *Pro Se* Pet., Ex. C, ECF No. 626-3 at pp. 2, 16-23 (CODE Certificates).  He earned his GED in 2008.  He has also completed computer courses and a variety of other rehabilitative programs, in addition to working in various capacities, including as a cook and an orderly.  *See Pro Se* Pet., Ex. C, ECF No. 626-3; *see also Pro Se* Suppl., ECF Nos. 627, 627-1.

The Court should conclude that the time Mr. Naranjo has served is sufficient to meet the purposes of sentencing, particularly in light of the extraordinary and compelling circumstances in this case.

## CONCLUSION

For the foregoing reasons, Mr. Naranjo respectfully requests that the Court grant his motion

reduction in sentence and reduce his sentence to time-served.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

CELIA GOETZL
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500